# United States Tax Court

T.C. Memo. 2022-88

SPARTA PINK PROPERTY, LLC, SPARTA PINK MANAGER, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12114-20.                    Filed August 29, 2022.

————

*Vivian D. Hoard*, for petitioner.

*Christopher D. Bradley*, *Lori Katrine Shelton*, and *Alexandra E. Nicholaides*, for respondent.


MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed by Sparta Pink Property, LLC (Sparta), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) disallowed most of the deduction and determined penalties. Petitioner timely petitioned this Court for readjustment of the partnership items.

Currently before the Court is respondent's Motion for Partial Summary Judgment. Respondent contends that the deduction was properly disallowed because the easement's conservation purpose was not "protected in perpetuity." *See* § 170(h)(5)(A).[1]    Separately,

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] respondent contends that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties. We will deny the Motion on the section 170(h)(5)(A) question but grant it with respect to section 6751(b)(1).

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Sparta is a Georgia limited liability company organized in 2016. It is treated as a TEFRA partnership for Federal income tax purposes, and petitioner Sparta Pink Manager, LLC, is its tax matters partner.[2] Sparta had its principal place of business in Georgia when the Petition was timely filed.

In August 2016 WASCO, LLC, acquired a 99% interest in Sparta by contributing to it roughly 286 acres of land (Property) in Hancock County, Georgia. In December 2016 Sparta granted to the Southern Conservation Trust (grantee) a conservation easement over the Property. The deed of easement was recorded on December 29, 2016.

Sparta timely filed Form 1065, U.S. Return of Partnership Income, for its 2016 tax year. On that return it claimed a charitable contribution deduction of $15,632,748 for its donation of the easement. In support of this supposed value Sparta relied on an appraisal prepared by Clayton M. Weibel.

The easement deed recites the conservation purposes and generally prohibits commercial or residential development. But it reserves certain rights to Sparta, including the rights to repair, improve, enlarge, and replace existing improvements on the Property and construct additional improvements.[3] Additional improvements could include

---

[2] Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71) governed the tax treatment and audit procedures for many partnerships, including Sparta.

[3] When the easement was donated, the Property had a variety of existing improvements including two pole sheds (one of which covered an above-ground storage tank for fuel and electrical power meters), two enclosed storage sheds, a small silo, dog

[*3] agricultural structures such as barns and sheds, as well as roads and utilities to service them.

Paragraph 17 expresses the parties' intention that "the Purpose of this Conservation Easement be carried out in perpetuity." However, "[i]f circumstances arise in the future that render the Purpose of this Conservation Easement impossible to accomplish," giving rise to a judicial extinguishment of the easement, then on any subsequent sale or conversion the grantee is entitled to a portion of the proceeds.

Paragraph 19 defines the grantee's share of the proceeds as equal to "the current fair market value" (FMV) of the easement. The FMV of the easement is determined by multiplying the sale proceeds by a fraction specified in the regulations. But before this fraction is applied, the sale proceeds are reduced by "any increase in value after the date of this Conservation Easement attributable to improvements."

The IRS selected Sparta's return for examination and assigned the case to Revenue Agent (RA) Thomas Rikard. He concluded that Sparta had significantly overvalued the easement. He determined that it was entitled to a charitable contribution deduction of only $44,748, as opposed to the $15,632,748 deduction it claimed.

In January 2020, as his examination of Sparta neared completion, RA Rikard recommended assertion of the penalty for gross valuation misstatement. *See* § 6662(e), (h). In the alternative he recommended assertion of the penalties for substantial valuation misstatement, reportable transaction understatement, negligence, and/or substantial understatement of income tax. *See* §§ 6662(b)(1)-(3), (c)-(e), 6662A(b).

RA Rikard's recommendations to this effect were set forth in a civil penalty approval form that he prepared on January 27, 2020. His group manager, Margaret McCarter, digitally signed the form on February 10, 2020. Ms. McCarter has submitted a declaration confirming that she supervised RA Rikard's work during the examination and that she approved assertion of the penalties by signing the civil penalty approval form on February 10, 2020.

On February 24, 2020, RA Rikard mailed petitioner a packet of documents, including his draft revenue agent report (RAR), that set forth his proposed adjustments and penalty recommendations. More

---

kennels, gardens, a rock wall with a metal gate, and a high game fence enclosure with sheds used for deer feeding and management.

**[\*4]** than four months later, on July 9, 2020, the IRS issued petitioner a notice of final partnership administrative adjustment (FPAA), including a Form 886–A, Explanation of Items. The FPAA reduced the allowable charitable contribution deduction by $15,588,000—i.e., from $15,632,748 to $44,748—and determined the penalties set forth on the penalty approval form. Petitioner timely petitioned this Court for readjustment of partnership items.

*Discussion*

## I.     *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant partial summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

## II.    *Analysis*

### A.     *"Protected in Perpetuity"*

The Internal Revenue Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property." § 170(f)(3)(A). But there is an exception for a "qualified conservation contribution." § 170(f)(3)(B)(iii), (h)(1). For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity." § 170(h)(1)(C), (5)(A); *see TOT Prop. Holdings, LLC. v. Commissioner*, 1 F.4th 1354, 1362 (11th Cir. 2021); *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 201 (5th Cir. 2018).

In 1986 the Department of the Treasury issued final rules for determining whether this "protected in perpetuity" requirement is met. Of

[*5] importance here are the rules governing the mandatory division of proceeds in the event the property is sold following extinguishment of the easement. *See* Treas. Reg. § 1.170A-14(g)(6). The regulations recognize that "a subsequent unexpected change in the conditions surrounding the [donated] property . . . can make impossible or impractical the continued use of the property for conservation purposes." *Id.* subdiv. (i). Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable grantee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. *Ibid.* In effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes." § 170(h)(5)(A).

In *Coal Property Holdings, LLC v. Commissioner*, 153 T.C. 126, 137–40 (2019), we held that a deed of easement failed to satisfy these requirements where the grantee's share of postextinguishment sale proceeds was improperly reduced by carve-outs for "donor improvements." *See also TOT Prop.*, 1 F.4th at 1363; *PBBM-Rose Hill*, 900 F.3d 193 at 207–08. Respondent contends that the deed in this case has this defect.

Petitioner contends that the Motion should be denied in light of *Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89. In *Hewitt* the U.S. Court of Appeals for the Eleventh Circuit held that "the Commissioner's interpretation of § 1.170A-14(g)(6)(ii), to disallow the subtraction of the value of post-donation improvements . . . , is arbitrary and capricious and therefore invalid under the [Administrative Procedure Act's] procedural requirements." *Id.* at 1353. *Contra Oakbrook Land Holdings, LLC v. Commissioner*, 28 F.4th 700, 717–18 (6th Cir. 2022) (disagreeing with *Hewitt* and holding the regulation to be valid), *aff'g* 154 T.C. 180 (2020).

Absent stipulation to the contrary, appeal of this case would lie to the Eleventh Circuit. *See* § 7482(b)(1)(E). We are therefore obligated to follow the law as established by the Eleventh Circuit on this question. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). We will accordingly deny respondent's Motion for Partial Summary Judgment on this point, without prejudice to his resubmission of the arguments set forth therein should subsequent developments warrant that action.

[*6]    B.    *Penalty Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In a TEFRA case such as this, supervisory approval generally must be obtained before the IRS issues an FPAA to the partnership. *See Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 83 (2019). Once the Commissioner introduces evidence sufficient to show that written supervisory approval was obtained by that date, the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty before the proffered approval" was secured. *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).[4]

Respondent has supplied a copy of the civil penalty approval form by which RA Rikard recommended assertion of penalties against Sparta. RA Rikard finalized that form on January 27, 2020. His immediate supervisor, Ms. McCarter, digitally signed the form on February 10, 2020. The RAR notifying Sparta of the proposed penalties was sent on February 24, 2020. The FPAA with enclosed Form 886–A was issued on July 9, 2020. Because RA Rikard secured supervisory approval from Ms. McCarter before either of those communications was made to Sparta, the approval was timely. *See Frost*, 154 T.C. at 35.[5]

---

[4] Although the Commissioner does not bear a burden of production with respect to penalties in a partnership-level proceeding, a partnership may raise section 6751(b) as an affirmative defense. *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 236–37 (2018).

[5] Because RA Rikard secured supervisory approval on February 10, 2020, we need not decide whether the "initial determination" to assert penalties was embodied in the RAR (dated February 24, 2020) or in the FPAA (dated July 9, 2020). In *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020), the U.S. Court of Appeals for the Ninth Circuit considered the timeline for obtaining supervisory approval of "assessable penalties," which are not subject to deficiency or TEFRA procedures. The court held that, for an assessable penalty, supervisory approval is timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment." *Id.* at 1074. The court suggested that, in a deficiency or TEFRA case such as this, the deadline for securing supervisory approval would be the issuance of the notice of deficiency or the FPAA. *See id.* at 1071 n.4. If that analysis were adopted here, supervisory approval of the penalties was clearly timely: Approval was secured in February 2020, and the FPAA was not issued until July 2020.

**[\*7]**    Petitioner does not allege that the IRS formally communicated to Sparta, before February 10, 2020, its decision to assert penalties. Rather, petitioner argues that "[r]espondent did not make any effort to authenticate the documents attached to the declarations," including the civil penalty approval form and the sworn declarations from Ms. McCarter and RA Rikard. Petitioner asserts that the relevant facts must be established at trial.

We disagree. Respondent has supplied documentary evidence confirming that RA Rikard's immediate supervisor approved the assertion of penalties on February 10, 2020. Ms. McCarter has supplied a declaration, under penalties of perjury, averring: "In my role as group manager, I reviewed Mr. Rikard's work, including his revenue agent report and work papers from the examination . . . ." *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination).

We have repeatedly held that a "group manager's signature on the Civil Penalty Approval Form is sufficient to satisfy the statutory requirements." *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 17 (2020). And we have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125. In so doing, we have rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Thompson v. Commissioner*, T.C. Memo. 2022-80, at \*8; *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement").

With respect to the valuation misstatement penalties in particular, petitioner asserts that neither RA Rikard nor Ms. McCarter "had a factual basis to assert penalties" at the time these penalties were recommended and approved. That is supposedly because, according to RA Rikard's case activity record, the IRS engineer did not transmit an appraisal to him until February 24, 2020, two weeks after Ms. McCarter signed the penalty approval form. Petitioner surmises that Ms. McCarter approved the "categorical assertion of penalties based on the type of transaction" rather than undertaking an "actual review of the agent's substantive work."

**[\*8]**    Petitioner misapprehends the requirements of section 6751(b). That provision is captioned "Approval of assessment," not "Explanation of assessment," and requires that the initiated determination be "approved." *See Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, at \*7. As we have said before: "The written supervisory approval requirement . . . requires just that: written supervisory approval." *Ibid.* (quoting *Raifman*, 116 T.C.M. (CCH) at 28).

We have repeatedly rejected any suggestion that a penalty approval form or similar document must "demonstrate the depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17. Faced with assertions that IRS officers gave insufficient consideration to the matters before them, we have ruled such lines of inquiry "immaterial and wholly irrelevant to ascertaining whether respondent complied with the written supervisory approval requirement." *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214 (quoting *Raifman*, 116 T.C.M. (CCH) at 27–28); *see Estate of Morrissette v. Commissioner*, T.C. Memo. 2021-60, 121 T.C.M. (CCH) 1447, 1474.

To the extent petitioner asks us to look behind the civil penalty approval form, "it would be imprudent for this Court to now begin examining the propriety of the Commissioner's administrative policy or procedure underlying his penalty determinations." *See Raifman*, 116 T.C.M. (CCH) at 28 (citing *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328–29 (1974)). We reiterate (as if it needed reiteration) that a group manager's signature on a civil penalty approval form, without more, is sufficient to satisfy the statutory requirements. *See Belair Woods*, 154 T.C. at 17.[6]

To defeat a motion for summary judgment, petitioner "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d). Petitioner has set forth no "specific facts" to dispute the existence or timeliness of Ms. McCarter's signature. We thus hold that

---

[6] Petitioner asks that we defer decision of this question pending further discovery into the IRS administrative file, which petitioner hopes will confirm its submission that RA Rikard and Ms. McCarter lacked "a factual basis to assert penalties." Because the information sought is not relevant to any issue decided in this Opinion, we decline petitioner's request. *See Thompson*, T.C. Memo. 2022-80, at \*9 n.6; Estate *of Goldstein v. Commissioner*, T.C. Memo. 1986-599, 52 T.C.M. (CCH) 1244, 1246–47 (finding taxpayer's formal discovery request irrelevant when the information sought would not affect the outcome).

**[\*9]** all of the penalties determined have received the requisite supervisory approval.

To reflect the foregoing,

*An order will be issued granting in part and denying in part respondent's Motion for Partial Summary Judgment.*